

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

JUN 2 9 2017

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Criminal No. _____ |
| | § | UNDER SEAL |
| BAKER NIAZI, | § | |
| a/k/a Abubaker Baker Niazi, Abu | § | |
| Baker Niazi, Mike | § | |
| WALEED KHAN, M.D., and | § | **17 CR 388** |
| MUHAMMAD ARIF, | § | |
| | § | |
| Defendants. | § | |

## INDICTMENT

The Grand Jury charges:

### General Allegations

At all times material to this Indictment, unless otherwise specified:

1.      The Controlled Substances Act (CSA) governed the manufacture, distribution, and dispensing of controlled substances in the United States.  With limited exceptions for medical professionals, the CSA made it unlawful for any person to knowingly or intentionally manufacture, distribute, or dispense a controlled substance or conspire to do so.

2.      The CSA and its implementing regulations set forth which drugs and other substances are defined by law as "controlled substances," and assigned those controlled substances to one of five schedules (Schedule I, II, III, IV, or V) depending on their potential for abuse, likelihood of physical or psychological dependency, accepted medical use, and accepted safety for use under medical supervision.

3.      A controlled substance assigned to Schedule II meant that the drug had a high potential for abuse, the drug had a currently accepted medical use in treatment in the United States or a currently accepted medical use with severe restrictions.

4.      Pursuant to the CSA and its implementing regulations:

a.      As of on or about October 6, 2014, Hydrocodone was classified as a Schedule II controlled substance. 21 C.F.R. § 1308.12(b). Prior to on or about October 6, 2014, Hydrocodone was classified as a Schedule III controlled substance. Hydrocodone, sometimes prescribed under brand names including Norco, Lortab, and Vicodin, was used to treat severe pain and, as with other opioids, was highly addictive.

b.      Carisoprodol was classified as a Schedule IV controlled substance. 21 C.F.R. § 1308.14(c). Carisoprodol, sometimes prescribed under brand name Soma, was a muscle relaxant.

5.      Medical practitioners, such as physicians and nurse practitioners, who were authorized to prescribe controlled substances by the jurisdiction in which they were licensed to practice medicine were authorized under the CSA to prescribe, or otherwise distribute, controlled substances, if they were registered with the Attorney General of the United States. 21 U.S.C. § 822(b); 21 C.F.R. § 1306.03. Upon application by the practitioner, the Drug Enforcement Administration (DEA) assigned a unique registration number to each qualifying medical practitioner including physicians and nurse practitioners.

6.      Chapter 21 of the Code of Federal Regulations Section 1306.04 governed the issuance of prescriptions and provided, among other things, that a prescription for a controlled

substance "must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." Moreover, "[a]n order purporting to be a prescription issued not in the usual course of professional treatment . . . is not a prescription within the meaning and intent of [the CSA] and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances."

7.     All prescriptions for controlled substances had to be "dated as of, and signed on, the day when issued and shall bear the full name and address of the patient, the drug name, strength, dosage form, quantity prescribed, directions for use, and the name, address and registration number of the practitioner." 21 C.F.R. § 1306.05(a). "The refilling of a prescription for a controlled substance listed in Schedule II is prohibited." 21 C.F.R. § 1306.12(a); 21 U.S.C. § 829(a).

8.     Title 3 of the Texas Occupations Code Section 157.0511 delineated a physician's authority to delegate the prescribing or ordering of a Schedule III, IV, or V controlled substance, including to an advanced practice registered nurse or physician assistant.

## DEFENDANTS

9.     Defendant **BAKER NIAZI, a/k/a Abubaker Baker Niazi, Abu Baker Niazi, Mike** (NIAZI), was the de facto owner of Aster Medical Clinic (Aster), doing business at 5101 Avenue H, Suite 23 Rosenberg, Texas 77471, and was associated with other clinics in the greater Houston area.

10.     Defendant **WALEED KHAN, M.D.** (KHAN) was licensed by the State of Texas to practice medicine and maintained a DEA Registration Number. As of in or around October

2015, KHAN signed a document listing himself as an owner of Aster and was employed as the physician at Aster.

11.     Defendant **MUHAMMAD ARIF** (ARIF) was not licensed to practice medicine in Texas or elsewhere in the United States and did not maintain a DEA Registration Number.  ARIF posed as a physician at Aster where he purportedly saw patients and illegally prescribed medication without a medical license or a DEA Registration Number.

### COUNT 1
### Conspiracy to Unlawfully Distribute and Dispense Controlled Substances
### (21 U.S.C. § 846)

12.     Paragraphs 1 through 11 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

13.     From in or around September 2015 through in or around February 2016, the exact dates being unknown to the Grand Jury, in the Houston Division of the Southern District of Texas and elsewhere, the Defendants,

**BAKER NIAZI, a/k/a Abubaker Baker Niazi, Abu Baker Niazi, Mike;**
**WALEED KHAN, M.D.; and**
**MUHAMMAD ARIF,**

knowingly and intentionally combined, conspired, confederated, and agreed together and with each other, and with others known and unknown to the Grand Jury, to violate Title 21, United States Code, Section 841(a)(1), that is, to knowingly, intentionally, and unlawfully distribute and dispense, mixtures and substances containing a detectable amount of controlled substances, including Hydrocodone, a Schedule II controlled substance, and Carisoprodol, a Schedule IV

4

controlled substance, not with a legitimate medical purpose and outside the scope of professional practice.

All in violation of Title 21, United States Code, Sections 846.

### Purpose of the Conspiracy

14.     It was the purpose and object of the conspiracy for the Defendants to unlawfully enrich themselves by, among other things: (a) prescribing controlled substances without a legitimate medical purpose and outside the scope of professional practice; (b) generating large profits from those prescriptions; and (c) diverting the proceeds from those controlled substance prescriptions for the personal use and benefit of the Defendants and their coconspirators known and unknown to the Grand Jury.

### Manner and Means of the Conspiracy

The manner and means by which the Defendants and their coconspirators sought to accomplish the purpose and object of the conspiracy included, among other things:

15.     **WALEED KHAN** maintained a Texas medical license and a DEA Registration Number that enabled him to write prescriptions for Schedule II–V controlled substances, including Hydrocodone and Carisoprodol, among others.

16.     In or around 2015, **BAKER NIAZI** and his coconspirators opened medical clinics, including Aster, previously known as Xpress Medical Clinic.   **BAKER NIAZI** and his coconspirators also owned other clinics in and around Houston, Texas.

17.     **BAKER NIAZI** and his coconspirators hired licensed medical professionals including **WALEED KHAN** and others with DEA Registration Numbers.

5

18.     **BAKER NIAZI** and his coconspirators hired other individuals who did not have a medical license or a DEA Registration Number, including **MUHAMMAD ARIF**, to work at Aster and purport to be a medical professional.

19.     Coconspirators of the Defendants recruited patients to obtain prescriptions for controlled substances and were often themselves patients who obtained prescriptions for controlled substances at Aster.  **BAKER NIAZI** and others paid these coconspirators in exchange for bringing patients to Aster.

20.     Patients at Aster paid at least approximately $200 in cash to receive a prescription for controlled substances.

21.     **MUHAMMAD ARIF** represented to patients that he was a physician, and prescribed controlled substances without a medical license, knowing the patients did not have a legitimate medical need for the controlled substances and that he was not licensed to practice medicine.

22.     **WALEED KHAN** signed patient charts and prescriptions for patients he had not personally evaluated and whom he knew had not been evaluated by a licensed medical professional.  **WALEED KHAN** also pre-signed blank prescriptions for controlled substances, knowing that by pre-signing prescriptions, he was prescribing controlled substances to patients without a legitimate medical purpose and outside the scope of professional practice.

23.     The Defendants and their coconspirators maintained patient information in patient charts and on computers located at Aster.  In or around February 2016, **BAKER NIAZI** instructed Aster employee J.C. to remove a computer containing patient information from Aster Clinic following an audit by the Texas Medical Board, Board of Nursing, and DEA.

24.     **BAKER NIAZI**, **MUHAMMAD ARIF**, and their coconspirators collected cash from each patient seeking a controlled substance prescription.  **BAKER NIAZI**, **WALEED KHAN**, and **MUHAMMAD ARIF**, and their coconspirators split the proceeds from prescribing controlled substances without a legitimate medical purpose and outside the scope of professional practice.  **WALEED KHAN** was paid approximately $2,000 a day, or approximately $40,000 a month, for his services.

All in violation of Title 21, United States Code, Section 846.

**COUNTS 2–4**
**Unlawfully Distributing and Dispensing Controlled Substances and Aiding and Abetting**
**(21 U.S.C. § 841 and 18 U.S.C. § 2)**

25.     Paragraphs 1 through 11 and 15 through 24 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

26.     On or about the dates specified below, in the Houston Division of the Southern District of Texas and elsewhere, the Defendants,

**BAKER NIAZI, a/k/a Abubaker Baker Niazi, Abu Baker Niazi, Mike;**
**WALEED KHAN, M.D.; and**
**MUHAMMAD ARIF,**

aided and abetted by each other and others, did unlawfully distribute and dispense, not for a legitimate medical purpose and outside the scope of professional practice, the controlled substances alleged below:

//

//

//

//

//

| Count | On or about date | Controlled Substances | Patient |
|---|---|---|---|
| 2 | December 22, 2015 | Norco Soma | M.R. |
| 3 | January 26, 2016 | Norco Soma | M.R. |
| 4 | November 24, 2015 | Norco Soma | R.M. |

All in violation of Title 21, United States Code, Section 841 and Title 18, United States Code, Section 2.

### NOTICE OF CRIMINAL FORFEITURE
### (21 U.S.C. § 853(a))

27.     Pursuant to Title 21, United States Code, Section 853(a), the United States of America gives notice to Defendants,

**BAKER NIAZI, a/k/a Abubaker Baker Niazi, Abu Baker Niazi, Mike;
WALEED KHAN, M.D.; and
MUHAMMAD ARIF,**

that upon conviction of an offense in violation of Title 21, United States Code, §§ 841 and 846, the following is subject to forfeiture:

a.     all property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such violation; and

b.     all property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation.

### Money Judgment

28.     Defendants are notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture.

8

**Substitute Assets**

29.     Defendants are notified that in the event that one or more conditions listed in Title 21, United States Code, Section 853(p) exists, the United States will seek to forfeit any other property of the Defendants up to the total value of the property subject to forfeiture.

A TRUE BILL

ORIGINAL SIGNATURE ON FILE
FOREPERSON

ABE MARTINEZ
ACTING UNITED STATES ATTORNEY

ALEZA REMIS
TRIAL ATTORNEY
FRAUD SECTION, CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE