IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| UNITED STATES OF AMERICA | § | |
| --- | --- | --- |
| | § | Case No. 17-cr-388 |
| V. | § | |
| | § | |
| MUHAMMAD ARIF | § | |

## DEFENDANT ARIF'S REPLY TO UNITED STATES' RESPONSE TO THE MOTION TO SUPPRESS STATEMENTS OBTAINED IN VIOLATION OF THE FIFTH AMENDMENT

Defendant Mr. Muhammad Arif (herein "Mr. Arif") respectfully requests the Court consider this Reply to United States' (herein "DOJ") Response in Opposition to the Motion to Suppress Statements Obtained in Violation of the Fifth Amendment and requests a ruling on the pleadings, unless the Court deems a hearing to be necessary. An analogy of the circumstances before this Court, which is reviewing the video replay of the alleged constitutional waiver is akin to a referee in the National Football League ("NFL") reviewing a video replay to determine if a wide receiver made a valid catch.

NFL catch rules declare that if a wide receiver does not have complete control of the football, the play is ruled "dead", and the catch incomplete, the very moment the football makes contact with the ground. Irrespective of whether the wide receiver obtains complete control of the football moments after the contact, nothing that occurs thereafter is taken into consideration. Similarly, the very moment an individual invokes their Fifth Amendment Right-to-Counsel the "play" is ruled "dead" and the Court should not take anything said thereafter into consideration.

Here, the very moment Mr. Arif invoked his Fifth Amendment Right-to-Counsel the DOJ was required to immediately stop all questioning (i.e. the play must be ruled dead) and as a result a waiver could no longer be sought and obtained. Accordingly, the DOJ never had complete

control of the constitutional waiver before Mr. Arif invoked his Right-to-Counsel and this Court should not take anything obtained after invocation of such into consideration.

I. **Standard of Review**

The DOJ has not contested it bears the burden of showing the accused had sufficient awareness of the consequences of the waiver of a constitutional right. *Miranda v. Arizona*, 384 U.S. 436 (1966). Dkt. No. 60 ¶ 7. "Waivers of… constitutional rights must… be voluntary… knowing, intelligent acts done with sufficient awareness of… consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). Dkt. No. 60 ¶ 7. Courts must "indulge in every reasonable presumption against waiver." *Brewer v. Williams*, 430 U.S. 387, 404 (1977). Dkt. No. 60 ¶ 7. The DOJ's burden to show the confession was given voluntarily. *Medina v. California*, 505 US 437, 463 (1992). See Dkt. No. 60 ¶ 7. If a confession was made involuntarily, any conviction cannot stand. *Stroble v. California*, 343 U.S. 181, 190 (1952). See Dkt. No. 60 ¶ 8.

II. **Misstatements of Fact and Law Present in the DOJ's Opposition Brief.**

The DOJ contorts its own Exhibit 2 to fit the facts needed for a win in the Fifth Circuit. Unable to secure victory in this circuit, the DOJ resorts to citing three out-of-circuit illustrative cases. First, *US v. Wheeler* actually highlights that the confession in the case at hand was involuntary. Second, DOJ cited *US v. Clark,* which cited a Sixth Circuit case much closer to the facts in the instant case. Third, *United States v. Eligwe* demonstrates why the post-indictment right to counsel, like in this case, is much stronger.

A. **To Win in the Fifth Circuit, DOJ Resorts to Contort and Twist the Fact Pattern**

The DOJ cites to *Davis v. US*, notes the Fifth Circuit's interpretation, and then tries to alter the facts to fit the law. In the Fifth Circuit, the use of modal verbs such as 'maybe,' 'might'

or 'could' combined with a question format are deemed ambiguous. See Mary Strauss, *Understanding Davis v. United States*, 40 Loy. L.A. L. Rev. 2011, 1023 fn 83 (2007).

The DOJ begins analyzing applications of *Miranda* and *Edwards* protections by citing to the *Soffar v. Crockrell* (5th Cir. 2002) for the proposition "*Davis* established a bright-line rule, under which 'a statement either is such an assertion of the right to counsel or it is not.'" Dkt. No. 68 at 4. Yet, in *Soffar*, the Court observed defendant's statements could be categorized as: "he asked [if] he should get an attorney; how he could get one; and how long it would take to have an attorney appointed." The Court noted "[w]hile a suspect need not 'speak with the distinction of an Oxford don,' he must nevertheless clearly articulate his desire to have an attorney present."

The DOJ cites to *US v. Montes*, 602 F.3d 381 (5th Cir. 2010) observing "[t]he investigator conducting questioning has no obligation to [] clarify the ambiguous comment." Yet the DOJ fail to mention that in *Montes*, the defendant "signed a waiver which detailed his ability to invoke his right to counsel at any time and end questioning." *Id.* 385. Also, in that case "agents testified [defendant] said… 'Maybe I should get an attorney' or 'Do I need an attorney?'" *Id.*

Here, however, not only was Mr. Arif not given a waiver to read and sign, but also the DOJ conveniently presented the initial exchange in its Relevant Background as "[c]an I talk to my wife? [Mr. Arif] continues, saying something that ends with 'go for the lawyer?' *Id.* 09:02:55-09:03:00. Agent #1 replies, 'Ok.'" Dkt. No. 68 ¶ 2. In contrast, the DOJ's own dictographer in their Exhibit 2, presented the same exchange as follows: "DEA Special Agent Armour asks "Are you willing to answer some questions?" (Dkt. No. 68 ¶ Exhibit 2, Line 22). To which, Mr. Arif states "Can I talk to my wife? To… just go for the lawyer." (*Id.* Line 23)

First, with the precision of an Oxford don, the DOJ transforms Mr. Arif's imperative, declarative statement (i.e. period ending) from its own Exhibit 2 into an interrogative one (i.e.

3

question mark ending) in its Relevant Facts section to conveniently fit the law of the Fifth Circuit. Second, unlike *Soffar*, Mr. Arif clearly articulated his desire to have an attorney present with a period ending sentence— DOJ's own dictographer agreed. Third, unlike in *Montes*, there was no 'maybe' statement— Instead, Mr. Arif clearly articulated his desire to have an attorney present when he affirmatively declared "[t]o… just go for the lawyer." (*Id.* Line 23).

Lastly, the sole reason Mr. Arif even said "[c]an I talk to my wife?" was because the DOJ refused to let him bring his cellphone, which contained his lawyer's phone number, when they raided his home and arrested him. It is absolutely reasonable for Mr. Arif, who had just been raided and arrested in front of his family, placed in a small room at an unknown location, and was now being interrogated by two agents, to assume that in order for him to have his lawyer present during the questioning he would have to call that lawyer. Since he didn't have his cellphone nor his lawyer's phone number with him due to the DOJ and obviously could not freely leave the room to make a phone call, he understandably said "[c]an I talk to my wife? *To… just go for the lawyer*." In other words, he asked for permission to make a phone call to his wife, who has his lawyer's phone number, and tell her to go get the lawyer.

**B. <u>Unable to Win in the Fifth Circuit, DOJ Resorts to Fourth & First Circuit Cases</u>**

The DOJ seeks refuge in allegedly illustrative Fourth and First Circuit case law given the exemplary strength of demonstrative Fifth Circuit case law on the issue.

**1. <u>DOJ's First Illustrative Case Highlights the Involuntariness Present Here</u>**

The DOJ cites to *US v. Wheeler*, 84 F. App'x 304 (4th Cir. 2003) finding a suspect's statement he wanted to "call [his] family to see about a lawyer" was not a "clear, unambiguous request." In *Wheeler*, after making the request the defendant was "taken to the hospital for treatment of an injury to his right hand." And, "[l]ater that day…[h]e gave statements during the

4

subsequent interview." The court there held "no allegation that Wheeler's will was overborne by police coercion or that his ability to comprehend his situation was seriously impaired." *Id*. 2.

Here, however, Mr. Arif was pulled from his morning shower where after "[t]he arresting officers allowed Mr. Arif to put on clothes to replace the towel but *prevented him from* putting on his prescription glasses, *taking his mandatory diabetes medication*, and taking his cellular phone. Dkt. No. 60 ¶ 2 (emphasis added). And there after he was taken to an unknown location and placed in a small room with two federal agents. Unlike *Wheeler*, Mr. Arif's will was overborn by police coercion and his ability to comprehend his situation was seriously impaired.

And, DOJ's own Exhibit 2 provides that Mr. Arif stated "I can talk to [my wife] and tell her to… to let me talk to the lawyer." Dkt. No. 60 ¶ Exhibit 2, Page 1, line 32. Then S/A Armour said "Okay." *Id*. Where after, D/I Mills coercively intercedes "No, no, no, [stutters]" Dkt. No. 60 ¶ Exhibit 2, Page 2, line 2. Thus, even though S/A Armour understood what Mr. Arif said and wanted, Mr. Arif's will was overruled.

### 2. DOJ's Second Illustrative Case Cites a Case Closer to Facts Herein

The DOJ cites to *US v. Clark* as illustrative— but it is not. There, the defendant said "I guess this is where I have to stop and ask for a lawyer, I guess." The defense argued "the phrase 'I guess' does not undermine a declarative sentence." *Id*. 185. And, "post-*Davis*, the typical case in which ambiguity has been found concerns equivocal statements such as, '[m]aybe I should get a lawyer,' in contrast to the declarative, 'I guess I should get a lawyer.' *Id*. In further support, the defense cited to *Kyger v. Carlton*, 146 F.3d 374 (6th Circuit) which held "I'd just as soon have an attorney" was unambiguous and "if the request were equivocal, subsequent statements by police constituted 'an inappropriate effort to pressure [the defendant] to answer, rather than an appropriate attempt to get [the defendant] to clarify his response." *Id*.

5

Here, the facts are much closer to *Kyger* than the *Clark*. Mr. Arif's request "[c]an I talk to my wife? To… just go for the lawyer" is much closer to "I'd just as soon have an attorney" than it is to "I guess this is where I have to stop and ask for a lawyer, I guess." After being inappropriately pressured, at the end of the interrogation, the exhausted diabetic Mr. Arif is told by D/I Mills "All right. Thank you for answering our questions. Thank you for, for…." to which Mr. Arif again begged "Would it be possible to talk to my wife now?... [b]ecause I have to tell her how to [U/I] my phone. Cause theres a code there so…" Mr. Arif wanted to tell his wife how to unlock his phone to call his lawyer. In other words, he never lost the desire for a lawyer.

### 3. DOJ's Third Illustrative Case Highlights Sixth Amendment Violations Here

The DOJ then cites to the Fourth Circuit unpublished opinion *United States v. Eligwe* (456 F. App'x 196) which actually highlights the prospect of further gross constitutional violations in the instant case. In *Eligwe*, the police "reviewed the Police Department's advice of rights form" with the Defendant who then "executed the form." *Id*. at 5. In a footnote, the Court observed "[a]lthough Eligwe alleges a violation of both his Fifth and Sixth Amendment rights, his Sixth Amendment rights have not yet attached See *United States v. Cain*, 524 F.3d. 477, 481 (4th Circuit. 2008) (citing *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991)('A criminal defendant's Sixth Amendment right to counsel attaches at the initiation of the adversary judicial proceedings, which at least includes the point of… indictment"). Here, the interrogation occurred post-indictment and arrest triggering additional Sixth Amendment protections.

What makes the instant case closer to *Edwards* is that a post-indictment arrest warrant had been issued in the case. Turns out, since the instant case is post-indictment not only could Mr. Arif's Fifth Amendment Right to Counsel be violated but so too could his Sixth Amendment Right to Counsel also be violated. In other words, the constitutional protections are higher here.

6

In other words, the "mounting pressures of prolonged police custody" are much higher in the instant case than any case cited by the DOJ. See *Shatzer*. And, that is why the Court should find any such constitutional waiver was given involuntarily.

### III. Conclusion

After indulging in every reasonable presumption against the waiver of constitutional rights, the Court should suppress Mr. Arif's statements. The DOJ has not shown any confession given was voluntary. Instead, the DOJ twists their own Exhibit 2 to fit the facts to their desired outcome instead of considering the greater considerations of due process and justice.

Unable to find favorable precedence in the Fifth Circuit, the DOJ cites a triplicate of out-of-circuit non-precedential cases that would never have given Mr. Arif or any other defendant in this circuit notice on how to effectively invoke their Fifth Amendment Right-to-Counsel. In fact, these cases highlight why the statements in this case need to be suppressed.

WHEREFORE Mr. Arif respectfully requests this Court GRANT the Motion to Suppress [Dkt. No. 60] because Mr. Arif's custodial interrogation is inadmissible on the pleadings and United States Exhibit 2.

Respectfully submitted,

M. Obaid Shariff
The Shariff Law Firm, PLLC.
4734 West Alabama St., Suite 201
Houston, Texas 77027
Tel: (832) 669-2090
Fax: (832) 582-3611
mshariff@shariifflawfirm.com

***Attorney for Defendant Muhammad Arif***

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

------------------------------------------------------------------X

UNITED STATES OF AMERICA                        Case No. 17-CR-388

     v.

MUHAMMAD ARIF
                                                   **CERTIFICATE OF SERVICE**

------------------------------------------------------------------X

TO:     Clerk of the Court

     I hereby certify that on April 25, 2018, I electronically filed the foregoing **Defendant Arif's Reply to United States' Response to Motion to Suppress Statements Obtained in Violation of the Fifth Amendment** with the Clerk of the Court using the CM/ECF system and/or via email to the following:

Aleza Remis
Aleza.Remis@usdoj.gov
Attorney for USA

David Kiatta
david@kiatta-law.com
Attorney for Defendant Baker Niazi

James Alston
alstonlaw@me.com
Attorney for Defendant Waleed Khan, M.D.

                                                _____
                                                M. Obaid Shariff
                                                The Shariff Law Firm, PLLC.
                                                4734 West Alabama St., Suite 201
                                                Houston, Texas 77027
                                                Tel: (832) 669-2090
                                                Fax: (832) 582-3611
                                                mshariff@sharifflawfirm.com

                                                ***Attorney for Defendant Muhammad Arif***